# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| SE PROPERTY HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 16-0567-WS-MU |
| | ) | |
| SAINT FAMILY LIMITED | ) | |
| PARTNERSHIP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter comes before the Court on defendants' "Motion to Dismiss or in the Alternative for More Definite Statement and Motion for Court to Abstain or in the Alternative Stay" (doc. 10). The Motion has been the subject of extensive briefing and is now ripe.[1] Also pending is Defendants' Motion to Correct (doc. 28), which is **granted**. The revised text from the Motion to Correct is hereby **substituted** for the fourth paragraph of Section II.A. of Defendants' Reply (doc. 24), beginning on page 11 and extending to the top of page 12.

## I.    Relevant Background.

This case is one of a number of fraudulent transfer actions that SE Property Holdings, LLC ("SEPH"), is pursuing in this District Court against guarantors of multimillion dollar loans made by SEPH's predecessor for the development and financing of certain real estate projects in Orange Beach, Alabama known as Bama Bayou and Marine Park. When the projects failed and the loans went into default, the guarantors declined to pay, thereby embroiling SEPH and the

---

[1]    At the outset, the Court observes that defendants filed a 22-page Reply without prior judicial approval, in contravention of the Local Rules. *See* Civil L.R. 7(e) ("[R]eply briefs must not exceed fifteen (15) pages. … No brief exceeding these page limitations may be filed unless the Court has previously granted leave to file a brief in excess of these limits."). Notwithstanding this violation, and in the interest of avoiding the delays that would occur if (as is customary) the Reply were stricken for non-compliance with Civil L.R. 7(e), the Court in its discretion will accept and consider the Reply in its present form.

guarantors in many years of litigation spanning numerous cases and courts, including this District Court and the Mobile County Circuit Court, as well as probate and bankruptcy courts.

In this particular action, SEPH filed a Complaint (doc. 1) against defendants, Saint Family Limited Partnership ("SFLP"); Frances J. Saint, in her individual capacity; Frances J. Saint, in her capacity as Personal Representative of the Estate of John B. Saint, deceased (the "Estate" or the "Saint Estate"); and Kasubra, LLC.[2] The well-pleaded factual allegations of the Complaint, which are accepted as true for purposes of the Motion to Dismiss analysis, include the following: During the period of 2005 to 2007, John Saint ("Saint") executed certain guaranties in favor of SEPH's predecessor, Vision Bank, pursuant to which Saint guaranteed a total of $7,875,000 in principal on Vision Bank loans for the Bama Bayou and Marine Park developments. (Doc. 1, ¶ 8.) Saint was not only the largest individual owner of the Bama Bayou and Marine Park projects, but he was also the single largest individual guarantor of the subject loans. (*Id.*) Vision Bank "relied greatly on John Saint's guaranties and his reported net worth and assets in its decision to make the Loans and extend credit to Bama Bayou and Marine Park." (*Id.*)[3]

According to the Complaint, John Saint was aware by no later than early 2007 that Bama Bayou's financial condition was rapidly deteriorating (*i.e.*, that it was "running out of cash"). Vision Bank relied on Saint's guaranties and reported assets / net worth to loan an additional $5 million to Bama Bayou in September 2007 on a short-term basis to help service the debt. (*Id.*, ¶ 9.) Even so, Bama Bayou and Marine Park ultimately defaulted on the loans and notes in

---

[2]     Although the Complaint asserts purely state-law causes of action arising under Alabama law, federal subject matter jurisdiction was properly predicated on the diversity provisions of 28 U.S.C. § 1332. Indeed, the Complaint's allegations confirm that there is complete diversity of citizenship between SEPH and defendants, and that the amount in controversy exceeds $75,000, exclusive of interest and costs.

[3]     The Complaint states that John Saint died on November 28, 2014; that his last will and testament was admitted to probate in the Mobile County Probate Court on December 11, 2014; and that letters testamentary were issued to his widow, defendant Frances Saint, in her capacity as personal representative of his Estate. (*Id.*, ¶ 4.) According to the Complaint, documents on file in the Probate Court reflect that at the time of his death, Saint held assets totaling $2,009,355, versus liabilities of $32,739,407. (*Id.*, ¶ 19 n.1.) The Complaint further alleges that "[c]laims totaling over $25,000,000 have been filed against the Saint Estate by creditors of John Saint." (*Id.*)

December 2008.  (*Id.*)  Vision Bank demanded payment from Saint in accordance with his guaranties; however, he refused to pay, and "[t]he entire debt remains unpaid" today.  (*Id.*)  The total amount of Saint's indebtedness to SEPH as of the filing of the Complaint in November 2016 is alleged to be in excess of $20,905,000 in principal and accrued interest (exclusive of attorney's fees, expenses and costs of collection).  (*Id.*, ¶ 25.)

The Complaint also chronicles what it describes as a series of asset transfers undertaken by John Saint mostly between December 2006 and October 2007, which had the effect of "transferr[ing] away the bulk of his wealth and assets (over $35,000,000 in value) to entities he owned or controlled, to family members and to other insiders."  (*Id.*, ¶ 21.)  Those asset transfers are enumerated in the Complaint as follows: (i) on December 12, 2016, Saint transferred 500 shares in JDC Acquisition Corporation (valued at $31 million, according to the Complaint) to defendant SFLP; (ii) on December 14, 2016, Saint and defendant Frances Saint transferred their 70% interest in defendant Kasubra (valued at $3.4 million) to SFLP; (iii) on June 29, 2007, Saint transferred his ownership interest in a house and lot in Dauphin Island, Alabama (valued at $275,000) to Frances Saint; (iv) in July or August 2007, Saint transferred certain Wachovia Securities (valued at $10,000), 8,307 shares of Wachovia Corporation (valued at $450,000), 6,294 shares of Colonial Bancgroup (valued at $200,000), and 100 shares of Colonial Properties (valued at $14,000) to SFLP; (v) also in 2007, Saint transferred his stock in Detroit Edison (valued at $20,000) to SFLP; (vi) on October 29, 2007, Saint transferred his ownership interest in his residence on Chimney Top Drive South in Mobile, Alabama (valued at $275,000) to Frances Saint; (vii) on October 29, 2007, Saint transferred his 98% ownership interest in SFLP as a limited partner to Frances Saint, with Saint and Frances Saint each retaining a 1% ownership interest in SFLP as general partners; and (viii) in 2007 or 2008, Saint transferred the contents of his Morgan Keegan account (valued at $31,000) to SFLP.  (*Id.*, ¶¶ 10-20.)[4]  The Complaint alleges that, as a direct result of these transfers, Saint's holdings plummeted from $45,725,000 in valuation to just a shade over $2 million.  (*Id.*, ¶ 20.)

---

[4]     Several other transfers are also recited in the Complaint; however, the foregoing items appear to account for most of the value of the assets that SEPH claims were fraudulently transferred and for which it seeks relief in this action.  The valuation figures set forth in the Complaint for these various assets are purportedly culled from a personal financial statement that Saint furnished to Vision Bank in May 2007.  (*Id.*, ¶ 20.)

The Complaint further alleges that John Saint concealed these transfers from Vision Bank by, among other things, delivering to Vision a false, inaccurate and fraudulent personal financial statement in May 2007. (*Id.*, ¶¶ 20-21.) According to the Complaint, Saint listed in that financial statement many assets he had already transferred away (including most notably the $31 million in JDC Acquisition stock and the $3.4 million interest in Kusabra, which combined to total 77% of Saint's net worth as reported in the financial statement) some five months earlier, in December 2006. (*Id.*, ¶ 21.) Because of this and other acts of concealment by Saint and Frances Saint, plaintiff alleges, SEPH/Vision was unaware of these transfers until September/October 2016. (*Id.*) Plaintiff avers that, had Saint's 2007 financial statement accurately reflected these transfers, it would not have continued to fund the Marine Park loan, would not have made additional loans for the Bama Bayou project, and would not have extended the loans' maturity dates on multiple occasions to allow Bama Bayou and Marine Park time to seek out other financing. (*Id.*, ¶ 22.)

On the strength of these factual allegations, the Complaint asserts five causes of action against defendants. Counts One and Two are statutory claims of fraudulent transfer under the Alabama Uniform Fraudulent Transfer Act, Ala. Code §§ 8-9A-1 *et seq.* ("AUFTA"). In particular, Count One alleges that the above-described transfers are constructive fraudulent transfers pursuant to Ala. Code §§ 8-9A-5 and/or 8-9A-4(c); meanwhile, Count Two alleges that those transfers are actual fraudulent transfers pursuant to Ala. Code § 8-9A-4(a). The remedies sought by SEPH for these alleged AUFTA violations include a monetary judgment against all defendants (as well as subsequent transferees) for compensatory and punitive damages, as well as declaratory relief "that the Court set aside said fraudulent transfers and declare such transfers (and any subsequent transfers of the property and assets) null and void." (*Id.*, at 11-12.)

Count Three is a claim for conspiracy to defraud, alleging that Saint, defendants "and other subsequent transferees conspired to commit said fraud on SEPH in an effort to deprive SEPH of assets that could be used to pay the debts owed to SEPH by John Saint and the Saint Estate." (*Id.*, ¶ 33.) Counts Four and Five are common-law fraud causes of action against the Estate relating to John Saint's May 2007 personal financial statement. As pleaded, the claims are that Saint "intentionally misrepresented his assets and net worth to Vision" in that statement (fraudulent representation), and that Saint breached his "duty to disclose to and inform Vision"

of such asset transfers before, contemporaneously with, and after submitting that financial statement to Vision Bank (fraudulent concealment). (*Id.*, ¶¶ 36, 39.)

Defendants now move for dismissal of all such claims and causes of action. Alternatively, defendants move for a more definite statement as to Count Three and abstention or a stay of this matter in its entirety pending the outcome of proceedings involving the John Saint Estate that are pending in Mobile County Probate Court.

## II. Analysis.

### A. Counts One and Two and the "Real Party in Interest" Objection.

With respect to SEPH's claims under the AUFTA, defendants maintain that dismissal is appropriate because SEPH is not the real party in interest for those fraudulent transfer claims.[5] Defendants' position is that the "real party in interest" for the fraudulent transfer claims is not SEPH, but is instead defendant Frances Saint, in her capacity as Personal Representative of the Estate of John Saint.

In so contending, defendants' reasoning begins with the proposition that, as pleaded in the Complaint, Saint's liabilities were approximately 16 times greater than his assets at the time of his death (roughly $32 million versus roughly $2 million), and creditors have filed more than $25 million in claims against the Saint Estate in Probate Court. Thus, the claims against the Saint Estate outstrip its assets by a wide margin. Next, defendants point to a section of the Alabama Probate Procedure Act that reserves for the personal representative the power to recover property as needed to pay the decedent's unsecured debts, to-wit:

> "The property liable for the payment of unsecured debts of a decedent includes all property transferred by the decedent by any means which is in law void or voidable as against creditors, and subject to prior liens, *the right to recover this property, so far as necessary for the payment of unsecured debts of the decedent, is exclusively in the personal representative.*"

Ala. Code § 43-2-838 (emphasis added).[6] Because § 43-2-838 vests authority in recovering property transferred by the decedent in a void or voidable manner exclusively with the personal

---

[5] Of course, the Federal Rules of Civil Procedure require that "[a]n action must be prosecuted in the name of the real party in interest." Rule 17(a)(1), Fed.R.Civ.P.

[6] This section appears never to have been construed by courts applying Alabama law. Indeed, neither side cites any authorities examining the Alabama provision in the context of an action in which a creditor has brought claims under the Uniform Fraudulent Transfer Act in a (Continued)

representative, and because these assets are needed to pay the Estate's debts which greatly exceed its assets, defendants conclude that Frances Saint (as the Estate's personal representative) is the real party in interest for Counts One and Two. Accordingly, defendants posit, she must be realigned as a plaintiff pursuant to Rule 17(a) of the Federal Rules of Civil Procedure. Of course, any such realignment would destroy federal diversity jurisdiction (because Frances Saint's citizenship is the same as that of other defendants) and require dismissal. Defendants say this result is warranted from a public policy standpoint, in order to prevent "a multitude of lawsuits filed by separate creditors of the deceased which could result in inconsistent determinations by a multitude of courts setting aside the transfers of the same assets in favor of different creditors." (Doc. 11, at 9.)[7]

As noted in footnote 6, *supra*, the parties have not identified a single case authority construing the language of § 43-2-838 in the context of Uniform Fraudulent Transfer Act claims brought by a creditor against an estate for transfers made by the decedent to the estate's personal representative. Thus, this Court's analysis must focus on the statutory language itself.[8] By its terms, § 43-2-838 vests the "right to recover" the decedent's "property" "exclusively in the personal representative" where (i) the decedent transferred property "by any means which is in law void or voidable as against creditors;" and (ii) recovery of the property is "necessary for the

court of general jurisdiction. Moreover, the Court has searched decisional authorities from both Alabama and 14 other jurisdictions (Alaska, Arizona, Colorado, Hawaii, Idaho, Maine, Massachusetts, Minnesota, Montana, Nebraska, North Dakota, South Carolina, South Dakota, Utah) that have adopted the Uniform Probate Code ("UPC") in vain for any meaningful discussion of UPC § 3-710, which Alabama adopted as § 43-2-838.

[7] There is no indication in the record that any other creditor of John Saint has initiated legal proceedings in any forum seeking to set aside the asset transfers described in SEPH's Complaint.

[8] "When the language of a statute is plain and unambiguous we must apply that meaning." *Cox Enterprises, Inc. v. Pension Ben. Guar. Corp.*, 666 F.3d 697, 704 (11th Cir. 2012); *see also Silva-Hernandez v. U.S. Bureau of Citizenship and Immigration Services*, 701 F.3d 356, 361 (11th Cir. 2012) ("Those who ask courts to give effect to perceived legislative intent by interpreting statutory language contrary to its plain and unambiguous meaning are in effect asking courts to alter that language, and courts have no authority to alter statutory language.") (citation omitted).

payment of unsecured debts of the decedent." This plain language would appear to support

defendants' position insofar as SEPH may be seeking in Counts One and Two the remedy of

having the transfers set aside and the transferred assets restored to the Estate of John Saint for

purposes of paying Saint's unsecured debts in probate proceedings.

A fair reading of Counts One and Two, however, reflects that SEPH seeks remedies far

beyond revesting title to the transferred assets in the Estate. Indeed, in both AUFTA claims,

SEPH demands "compensatory and punitive damages" against the Saint Estate, Frances Saint,

SFLP and Kasubra; as well as that the Court "declare such transfers (and any subsequent

transfers of the property and assets) null and void." (Doc. 1, at 11-12.) These remedies are

outside the scope of the plain language of § 43-2-838, which gives the Estate's personal

representative the exclusive right "to recover this property, so far as necessary for the payment

of the unsecured debts of the decedent." In seeking money damages from the transferees of the

subject property, SEPH is not seeking to recover property to pay John Saint's unsecured debts,

but is rather pursuing compensation from those defendants pursuant to Alabama Code § 8-9A-

8(b) for the harm they allegedly caused SEPH by receiving those transfers.[9] Moreover, a

declaratory judgment that the transfers violate the AUFTA would not appear to implicate § 43-2-

838. Stated differently, nothing in § 43-2-838 purports to grant a personal representative the

exclusive right to pursue any and all fraudulent transfer remedies related to the decedent's estate;

rather, it only affords the personal representative the exclusive right "to recover this property, so

far as necessary for the payment of unsecured debts of the decedent." The remedies sought by

SEPH – other than setting aside the fraudulent transfers – are not reserved for Frances Saint (as

personal representative of the Estate) by the clear language of § 43-2-838. That is to say, while §

43-2-838 gives Frances Saint the exclusive right to recover property that belongs in the Estate for

administration in the Mobile County Probate Court proceedings, it does not confer upon her the

---

[9]        More precisely, SEPH is demanding a money judgment for damages against the
transferees. Contrary to defendants' position, a money judgment for damages is not properly
equated to recovery of transferred property to pay Saint's debts. Were the law otherwise, the
result would be that the personal representative has the exclusive authority to bring a damages
claim on behalf of the estate's creditors against any alleged co-conspirator of the decedent.
Defendants proffer neither legal authority nor argument to support such an outcome.

exclusive right to pursue any and all remedies that are or might be available to creditors under the AUFTA.[10]

Because certain remedies are still available to it in Counts One and Two, notwithstanding the constraints imposed by § 43-2-838, SEPH – and not Frances Saint as personal representative – is the real party in interest for those claims, and diversity jurisdiction properly lies as to those claims without realigning Frances Saint as a plaintiff. Counts One and Two do not run afoul of Rule 17(a). The Motion to Dismiss is therefore **denied** on this point.[11]

---

[10] The available statutory remedies are extensive. *See, e.g.,* Ala. Code § 8-9A-7(a) (enumerating remedies available to creditors as including "[a]voidance of the transfer to the extent necessary to satisfy the creditor's claim," "attachment or other provisional remedy against the asset transferred or other property of the transferee," "injunction against further disposition … of the asset transferred or of other property," "[a]ppointment of a receiver to take charge of the asset transferred or of other property of the transferee," or "[a]ny other relief the circumstances may require").

[11] The Court reaches this conclusion for another reason, as well. The well-pleaded factual allegations of the Complaint are that Frances Saint was the beneficiary of the vast majority of the challenged asset transfers. Indeed, the fact pattern described in the Complaint is that John Saint repeatedly transferred his own assets (including $31 million of JDC Stock and a $3.4 million ownership interest in Kasuba) into defendant Saint Family Limited Partnership, then transferred a 98% interest in SFLP to Frances Saint in October 2007. Thus, Frances Saint is both the personal representative of the Estate, and the recipient/beneficiary of the bulk of the assets whose transfers are alleged to be fraudulent. Under defendants' construction of the Alabama Probate Procedure Act, only Frances Saint (in her role as personal representative) is empowered to take any action against the allegedly fraudulent transfers from John Saint to herself for the benefit of creditors such as SEPH. Not surprisingly, Frances Saint has not sued herself under the AUFTA, either in Probate Court or elsewhere, in the nearly two and a half years following the admission of John Saint's last will and testament to probate in December 2014. The Court does not and will not interpret § 43-2-838 as effectively suspending the AUFTA in circumstances such as these, leaving SEPH with no remedy. Nor does defendants' realignment argument have merit where, as here, the relief being sought is primarily against Frances Saint, the alleged recipient of the fraudulently transferred assets. Defendants' Motion to Dismiss posits that Frances Saint (the party against whom relief is sought) is really a plaintiff, not a defendant, in this case for Rule 17(a) purposes. The plain language of the Complaint – and common sense – shows otherwise. SEPH brought this action to obtain judgment against Frances Saint for millions of dollars that her late husband transferred to her before his demise. To label her as anything other than a defendant and to align her with SEPH in these circumstances would be to ignore that fundamental reality and do violence to realignment principles articulated in binding authorities. *See, e.g., City of Vestavia Hills v. General Fidelity Ins. Co.*, 676 F.3d 1310, 1313-14 (11th Cir. 2012) (explaining that "federal courts are required to realign the parties in an action to reflect their interests in the litigation," that parties "cannot confer diversity jurisdiction upon the (Continued)

-8-

**_B._**      **_Counts One and Two and the Timeliness Objection._**

Defendants' next ground for their Motion to Dismiss is an argument that Count One and a portion of Count Two are time-barred. This timeliness objection is structured as follows: By the plain language of the Complaint, all or substantially all of the transfers that SEPH challenges occurred during the time frame of 2006, 2007 and 2008. (Doc. 1, ¶¶ 11-18.) Count One is a constructive fraudulent transfer claim brought pursuant to Alabama Code §§ 8-9A-4(c) and 8-9A-5. (*Id.*, ¶ 27.) Count Two is an actual fraudulent transfer claim brought pursuant to Alabama Code § 8-9A-4(a). (*Id.*, ¶ 30.) Pursuant to the AUFTA, a claim for relief with respect to a fraudulent transfer under §§ 8-9A-4(c) or 8-9A-5(a) "is extinguished unless action is brought … within four years after the transfer was made when the action is brought by a creditor whose claim arose before the transfer was made." Ala. Code § 8-9A-9(3). Likewise, AUFTA provides that a claim for relief with respect to a fraudulent transfer under § 8-9A-4(a) "is extinguished unless action is brought … within six years after the transfer of personal property was made." Ala. Code § 8-9A-9(1).[12] Defendants' position is that the Complaint's allegations confirm all transfers at issue in Count One and all personal property transfers at issue in Count Two occurred outside the operative four- or six-year periods preceding the filing of the Complaint, such that those claims have been extinguished by operation of § 8-9A-9.

---

federal courts by their own designation of plaintiffs and defendants," and that courts must "arrange the parties according to their sides in the dispute") (citations omitted). Upon any reasonable examination of the interests in this litigation, SEPH and Frances Saint are not on the same side. There is no unity of interests between them as to the issues joined herein; rather, their interests are unequivocally and diametrically opposed. Frances Saint is properly aligned as a defendant, on the opposite side from SEPH, and diversity jurisdiction remains intact as to Counts One and Two.

      [12]      Certain aspects of Count Two involve transfers of real property, not personal property, alleged to have occurred in 2007 or 2008. (Doc. 1, ¶¶ 15, 18.) Those portions of Count Two are subject to a 10-year limitations period. *See* Ala. Code § 8-9A-9(1) ("A claim for relief with respect to a fraudulent transfer under this chapter is extinguished unless action is brought … [u]nder Section 8-9A-4(a) within 10 years after the transfer of real property was made."). SEPH filed its Complaint in November 2016, well within that 10-year period. Accordingly, defendants do not maintain that the real-property transfer components of Count Two are time-barred.

SEPH's rejoinder to the timeliness objection is to invoke Alabama's "discovery rule." Under well-settled Alabama law, "[i]n a fraud action, the running of the limitations period is tolled pursuant to the 'discovery rule' found in § 6-2-3, Ala.Code 1975." *Target Media Partners Operating Co. v. Specialty Marketing Corp.*, 177 So.3d 843, 862 (Ala. 2013). That statute provides that "[i]n actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud." Ala. Code § 6-2-3; *see also DGB, LLC v. Hinds*, 55 So.3d 218, 224 (Ala. 2010) ("this statute is usually applicable to cases wherein fraud is the basis of the cause of action") (citation omitted). "The question of when a party discovered or should have discovered the fraud is generally one for the jury." *Potter v. First Real Estate Co.*, 844 So.2d 540, 546 (Ala. 2002) (citation omitted). SEPH correctly notes that the Complaint includes specific factual allegations that, as a result of defendants' acts of concealment, SEPH did not discover the challenged transfers until September/October 2016, such that the § 8-9A-9 limitations clock began ticking at that time. Plaintiff has adequately pleaded the discovery rule, so as to render Counts One and Two timely, at least for purposes of Rule 12(b)(6) review.

Notwithstanding the foregoing, defendants fire back that the limitations periods prescribed by Alabama Code § 8-9A-9 are actually statutes of repose, not statutes of limitation. The difference between the two may be succinctly summarized as follows: "While a statute of limitations is intended to require plaintiffs to pursue diligent prosecution of known claims by limiting the time to bring suit based on the date when the cause of action accrued, … a statute of repose puts an outer limit on the right to bring a civil action …. The repose provision is therefore equivalent to a cutoff, in essence an absolute bar on a defendant's temporal liability." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1247 (11th Cir. 2016) (citations and internal quotation marks omitted). Further, "statutes of repose are distinct from statutes of limitation in that they are not subject to equitable tolling, even in cases of extraordinary circumstances beyond a plaintiff's control." *Id.* (citations and internal quotation marks omitted). If § 8-9A-9 were a statute of repose, then, Alabama's "discovery rule" would be inapplicable, and SEPH's Count One and most of Count Two would be untimely pursuant to the absolute statutory bar, irrespective of the discovery rule.

Defendants' timeliness objection fails at the Motion to Dismiss stage because they have not persuasively shown that § 8-9A-9 is a statute of repose. As noted, the baseline rule in

Alabama is that "[i]n actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud." Ala. Code § 6-2-3. Prior to Alabama's enactment of the AUFTA in 1989, Alabama courts applied the discovery rule to fraudulent transfer cases. *See, e.g., Donaldson v. Williams*, 222 So.2d 725, 726 (Ala. 1969) ("We are of the opinion that the ten years within which the bill could be filed did not begin to run until the discovery of the fraud, or when by the exercise of due diligence, the fraud might have been discovered."). Neither the text of § 8-9A-9 nor its official commentary says anything about displacing, overriding or abolishing the discovery rule in this context; to the contrary, that commentary specifies that subsection (2) (on which defendants rely) "adopts the present Alabama law" and that subsection (3) (on which defendants also rely) "changes present Alabama law" only by altering the six- or 10-year period to avoid transfers based on constructive fraud to four years. (*See* Alabama Comment to Ala. Code § 8-9A-9.) And the AUFTA expressly provides that "[u]nless displaced by the provisions of this chapter, the principles of law and equity, including … the law relating to … fraud … supplement its provisions." Ala. Code § 8-9A-10. In light of these circumstances, it is not surprising that case authorities and commentators alike have opined that Alabama's discovery rule is applicable to the time limits specified in § 8-9A-9. *See Cotter v. Gwyn*, 2016 WL 4479510, *14 (E.D. La. Aug. 25, 2016) (declining to dismiss plaintiff's AUFTA claims as untimely "because there remains an issue as to when the limitation period on his AFTA claims began to run. Fraud claims under Alabama law do not accrue until the discovery by the aggrieved party of the fact constituting the fraud or the cause of action fraudulently concealed.") (footnote and internal quotation marks omitted); *Tilley's Alabama Equity* § 11:10 (discussing Alabama Code § 8-9A-9, and opining that "[t]he statute of limitations did not begin to run until discovery of facts that would provoke inquiry in the mind of a reasonable and prudent man that, if followed up, would lead to the discovery of the fraud"). This Court reaches the same conclusion.[13]

---

[13]    In framing § 8-9A-9 as a statute of repose, defendants argue that "most states that have addressed the issue have determined that statutes based on Section 9 of the UFTA, like Alabama Code § 8-9A-9, are Statutes of Repose rather than Statutes of Limitation." (Doc. 28, at 2.) The problem with this argument is that Alabama expressly did <u>not</u> adopt Section 9 of the UFTA wholesale. Indeed, the Alabama Comment to § 8-9A-9 indicates, "This chapter generally (Continued)

Because movants have not persuasively shown that Alabama Code § 8-9A-9 operates as a statute of repose rather than a statute of limitations, that section remains subject to Alabama's discovery rule as codified at § 6-2-3. The Complaint adequately alleges that SEPH did not discover crucial facts animating Counts One and Two until September or October 2016; therefore, Rule 12(b)(6) dismissal on timeliness grounds is inappropriate. This prong of the Motion to Dismiss is **denied**.[14]

---

does not adopt the statute of limitations contained in the Uniform Act." As such, looking to jurisdictions that have adopted Section 9 of the UFTA to shed light on the meaning of Alabama Code § 8-9A-9 (which on its face "generally does not adopt" Section 9 of the UFTA) is an unhelpful and illogical exercise. Moreover, in their original Reply, defendants devoted one sentence to a textual analysis of § 8-9A-9; however, that sentence was deleted and superseded with the subsequent substitution of a new paragraph. (*Compare* doc. 24 at 11-12 *to* doc. 28 at 2-3.) Even if that textual analysis remained, defendants place far too much weight on the solitary word "extinguished." Section 8-9A-9 bears little resemblance to the verbiage used in Alabama's statutes of repose. *See, e.g.*, Ala. Code § 6-5-221(a) ("no relief can be granted on any cause of action which accrues or would have accrued more than thirteen years after the substantial completion of construction of the improvement on or to the real property, and any right of action which accrues or would have accrued more than thirteen years thereafter is barred"); Ala. Code § 6-5-482(b) ("notwithstanding any provisions of" § 6-2-3, "no action shall be commenced more than four years after the act, omission, or failure complained of"); Alabama Code § 6-5-574(b) (same). The point is simple: Alabama has clearly designated statutes of repose as such via the use of unambiguous language bypassing traditional discovery and accrual rules. Section 8-9A-9 contains no such terms. It does not purport to limit application of § 6-2-3's discovery rule or otherwise specify that claims accruing after a certain time period are absolutely barred. The Court will not impute an intent on the part of the Alabama legislature to engraft a statute of repose on the AUFTA, where the legislature did not use clear language (as it has in other contexts involving statutes of repose) to effectuate such a result, and in fact reiterated that Alabama's law of fraud (which would include the discovery rule found at § 6-2-3) generally supplements the AUFTA; and where the official commentary confirms that § 8-9A-9 "adopts the present Alabama law" in material respects, as to particular limitations periods.

[14]    In their Reply, defendants advance a brand-new argument that the Complaint does not sufficiently plead that SEPH discovered the facts giving rise to Counts One and Two within the limitations periods set forth in Alabama Code § 8-9A-9. (*See* doc. 24, at 14-16.) As a threshold matter, this argument is improper because defendants raised it for the first time in a reply. *See, e.g., Brown v. CitiMortgage, Inc.*, 817 F. Supp.2d 1328, 1332 (S.D. Ala. 2011) ("New arguments presented in reply briefs are generally not considered by federal courts.") (citations omitted); *Kirksey v. Schindler Elevator Corp.*, 2016 WL 7116223, *6 (S.D. Ala. Dec. 6, 2016) ("this argument is improper because it is newly raised in a reply although it was available earlier"); *United States v. Crumb*, 2016 WL 4480690, *17 (S.D. Ala. Aug. 24, 2016) ("this kind of new, previously available argument in support of a motion is not appropriately (Continued)

### C.    *Count Three and the Particularity Objection.*

As noted, Count Three consists of a common-law claim of conspiracy to defraud. According to the Complaint, John Saint, Frances Saint, SFLP, Kasubra and other transferees "conspired to commit said fraud on SEPH in an effort to deprive SEPH of assets that could be used to pay the debts owed to SEPH by John Saint and the Saint Estate." (Doc. 1, ¶ 33.)  In their Motion to Dismiss, defendants cite the heightened pleading requirement of Rule 9(b), and assert that Count Three falls short of that standard.

The Federal Rules of Civil Procedure provide that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b), Fed.R.Civ.P.  There is no rigid, inflexible, one-size-fits-all checklist for pleading fraud with particularity.  *See Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972-73 (11th Cir. 2007) ("While allegations of date, time or place satisfy the Rule 9(b) requirement that the *circumstances* of the alleged fraud must be pleaded with particularity, we have acknowledged that alternative means are also available to satisfy the rule in substantiating fraud allegations.") (citation and internal marks omitted).  And the Eleventh Circuit has emphasized that "[t]he application of Rule 9(b) … must not abrogate the concept of notice pleading." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citation and internal quotation marks

---

presented for the first time in a reply").  Even if this new argument set forth in defendants' Reply were properly considered on the merits (which it is not), the result would be unchanged. Defendants' argument is that, given the Complaint's allegations that Bama Bayou and Marine Park exhibited symptoms of financial instability and Vision Bank's professed reliance on John Saint's 2007 personal financial statement, "[o]rdinary prudence requires that the Plaintiff should have investigated the finances" of John Saint and thereby discovered the false representations in his financial statement long before late 2016. (Doc. 24, at 15.)  This debate about what Vision Bank / SEPH should have done to investigate Saint's finances and when they should have done it for purposes of the discovery rule is an argument for the finder of fact at trial, and therefore cannot be resolved in defendants' favor on a Motion to Dismiss.  The same goes for defendants' contention that Saint's failure to pay anything on his guaranties in 2008 should have caused Vision Bank "to discover in 2008 that John Saint no longer owned certain of his properties listed on his 2007 financial statement." (*Id.* at 16.)  Again, Alabama law is clear that "[t]he question of when a party discovered or should have discovered the fraud is generally one for the jury." *Jones v. Kassouf & Co., P.C.*, 949 So.2d 136, 140 (Ala. 2006) (citations omitted).  Whether a reasonable person would have inquired into the veracity of John Saint's 2007 financial statement earlier under the circumstances alleged here is a question not amenable to conclusive disposition via the Rule 12(b)(6) mechanism.

omitted).  Indeed, the Rule 9(b) particularity requirement "must be read in conjunction with Federal Rule of Civil Procedure 8's directives that a complaint need only provide a short and plain statement of the claim," and courts considering motions to dismiss for failure to plead fraud with particularity "should always be careful to harmonize the directives of [R]ule 9(b) with the broader policy of notice pleading found in Rule 8." *Hill v. Morehouse Medical Associates Inc.*, 2003 WL 22019936, *3 (11th Cir. Aug. 15, 2003) (citations and internal quotation marks omitted); *see also Urquilla-Diaz v. Kaplan University*, 780 F.3d 1039, 1051 (11th Cir. 2015) ("Rule 8's pleading standard is supplemented but not supplanted by Federal Rule of Civil Procedure 9(b).").

Under any reasonable reading of the pleadings, SEPH has set forth the circumstances of the alleged fraud with particularity.  Indeed, the Complaint alleges that John Saint guaranteed the repayment to plaintiff of millions of dollars in loans, then shifted the bulk of his own assets to family members and artificial entities that he controlled (*i.e.*, the other defendants in this action), after which he misrepresented to plaintiff that he still held those assets, all "in an effort to deprive SEPH of assets that could be used to pay the debts owed to SEPH by John Saint and the Saint Estate." (Doc. 1, ¶ 33.)  Based on the particular factual allegations (including allegations detailing the relationships among defendants, the transfers at issue, and the relevant time frame) pleaded in the Complaint, the Court readily finds that defendants have been alerted to the precise misconduct with which they are charged and are adequately protected against spurious charges of immoral and fraudulent behavior, which is the purpose of Rule 9(b).[15]  Thus, defendants' contention that the Complaint lacks the particularity required by Rule 9(b) in describing the fraudulent conduct at issue is not well taken, and dismissal of Count Three on that basis is not appropriate.

---

[15]      *See, e.g., United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012) (explaining that the objective of Rule 9(b) is to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges") (citation omitted); *Durham v. Business Management Associates*, 847 F.2d 1505, 1511 (11th Cir. 1988) ("The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior.") (citations and internal quotation marks omitted).

Nor is defendants' position strengthened by their related argument that Count Three must be dismissed for inadequately pleading a conspiracy. Defendants balk that the Complaint "contains no allegations of actions by F. Saint, Kasubra or SFLP of any action in furtherance of any alleged conspiracy." (Doc. 11, at 17.) They protest that the Complaint does not "identify when John Saint and the Defendants agreed to engage in the alleged fraudulent acts," does not "identify the dates when the Defendants rendered assistance to J. Saint in committing the fraudulent acts," and does not "explain how the conduct of the Defendants, F. Saint, Kasubra, and/or SFLP, furthered the commission of the alleged fraud by John Saint." (*Id.* at 18.) These assertions substantially overstate the pleading requirements for a civil conspiracy. Defendants cite no authority – and the Court is aware of none – requiring a plaintiff to plead the precise date of an alleged agreement to engage in fraud, or to plead specific overt acts in furtherance of the conspiracy committed by each and every defendant. Simply put, no such heightened pleading requirements exist.[16]

To be sure, the Eleventh Circuit has delineated minimum pleading requirements in a civil conspiracy context. In particular, the appellate court has counseled that "a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed. … A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy." *Shell v. U.S. Dep't of Housing and Urban Development*, 355 Fed.Appx. 300, 307 (11th Cir. Dec. 2, 2009) (quoting *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984)). Thus, a plaintiff's "bare assertion that a conspiracy occurred is insufficient to state a claim." *Shell*, 355 Fed.Appx. at 307. Here, SEPH has not confined its Complaint to a conclusory statement that a conspiracy existed. To the contrary, the Complaint delineates at some length the relationships between and among the defendants, the character of the acts done, and the benefits reaped by each defendant as a result of the conspiracy, all of which when viewed in the aggregate support a reasonable inference that

---

[16]     *See, e.g., Ex parte Reindel*, 963 So.2d 614, 621 n.11 (Ala. 2007) ("In a conspiracy, the acts of coconspirators are attributable to each other.") (citation omitted); *Huckleberry v. M.C. Dixon Lumber Co.*, 503 So.2d 1209, 1210-11 (Ala. 1987) ("It is not an essential element of the claim that a particular conspirator commit an overt act in furtherance of the conspiracy."); *O'Dell v. State ex rel. Patterson*, 117 So.2d 164, 168 (Ala. 1959) ("A great quantum of detail need not be required to be alleged as to the formation of the conspiracy because of the clandestine nature of the scheme or undertaking engaged in.").

these defendants conspired with John Saint to defraud plaintiff out of assets that it had been led to believe were available to pay Saint's guaranty obligations. The modest Eleventh Circuit pleading requirement for conspiracy claims is satisfied here.

More broadly, the allegations of Count Three are sufficient, if proven at trial, to support a civil conspiracy claim as a matter of substantive Alabama law (which governs that cause of action).[17] Indeed, the Alabama Supreme Court has opined that "[a] civil conspiracy claim operates to extend, beyond the active wrongdoer, liability in tort to actors who have merely assisted, encouraged, or planned the wrongdoer's acts." *DGB*, 55 So.3d at 234 (citation omitted). "The existence of the conspiracy must often be inferentially and circumstantially derived from the character of the acts done, the relation of the parties, and other facts and circumstances suggestive of concerted action." *Turner v. Peoples Bank of Pell City*, 378 So.2d 706, 708 (Ala. 1979); *see also Eidson v. Olin Corp.*, 527 So.2d 1283, 1285 (Ala. 1988) ("By its very nature, the existence of a conspiracy must often be inferred from circumstantial evidence and the relationship of the parties, as opposed to direct evidence."). SEPH's Complaint raises a reasonable inference that Frances Saint, SFLP and Kasubra "assisted" or "encouraged" John Saint's purportedly wrongful acts; after all, those defendants were insiders / family members / entities he controlled to which Saint transferred millions of dollars in assets at a time when his guaranty obligations were likely to ripen into payment demands by Vision Bank, yet Saint continued to list these assets among his holdings in a financial statement submitted to Vision Bank thereafter. The Complaint need not allege – and SEPH need not prove – the date of an agreement among these parties to defraud Vision Bank; rather, the conspiracy's existence may be proven at trial inferentially and circumstantially by the character of the acts done, the relation of the parties, and other facts and circumstances suggestive of concerted action. The Complaint adequately pleads such character of acts, relation of parties, and facts suggestive of concerted action to support a cognizable cause of action under Alabama law for civil conspiracy.

In light of the foregoing, the Motion to Dismiss or in the Alternative for More Definite Statement is **denied** as to Count Three, which comports with all applicable pleading

---

[17]    The Alabama Supreme Court has answered the question "whether Alabama recognizes a cause of action for conspiracy to defraud a creditor" in the affirmative. *A.T. Stephens Enterprises, Inc. v. Johns*, 757 So.2d 416, 419-20 (Ala. 2000). Defendants do not suggest otherwise.

requirements.  SEPH's civil conspiracy claim places defendants on notice of the nature of the alleged conspiracy and the circumstances of the alleged fraud.  Nothing further is required at the pleadings stage.

### D.        Counts Four and Five and the "Statement of Claim" Objection.

Counts Four and Five of the Complaint sound in theories of fraudulent representation and fraudulent concealment, relating to John Saint's purportedly false financial statement that he provided to Vision Bank in May 2007.  (Doc. 1, ¶¶ 35-40.)  These causes of action are lodged solely against "John Saint and the Saint Estate."

In their Motion to Dismiss, defendants argue that Counts Four and Five are properly dismissed for noncompliance with Alabama Code § 43-2-350(b), otherwise known as the Statute of Nonclaim.  The statute provides, in relevant part, that "[a]ll claims against the estate of a decedent … must be presented within six months after the grant of letters, … and if not presented within that time, they are forever barred and the payment or allowance thereof is prohibited.  Presentation must be made by filing a verified claim or verified statement thereof in the office of the judge of probate …."  Ala. Code § 43-2-350(b).  Alabama courts have long recognized that the Statute of Nonclaim is designed "to promote a speedy, safe, and definitive settlement of estates by giving the personal representative notice of all claims against the estate in his hands." *Moore v. Stephens*, 84 So.2d 752, 758 (Ala. 1956) (citation and internal quotation marks omitted).  Defendants' point is that the Complaint lacks allegations that SEPH filed a verified statement of claim relating to the fraud causes of action with the Mobile County Probate Court within a six-month period after issuance of letters testamentary for the Saint Estate.  Therefore, defendants reason, those claims are forever barred by operation of § 43-2-350(b).

SEPH's response is that, as discussed *supra* and as pleaded in the Complaint, SEPH did not discover the purportedly fraudulent transfers of assets that rendered John Saint's financial statement of May 2007 false and misleading until September/October 2016.  Thus, plaintiff reasons, application of Alabama's discovery rule obviates any argument that Counts Four and Five are barred by operation of the six-month notice period set forth in the Statute of Nonclaim. According to plaintiff, SEPH filed a statement of claim (in the form of this civil action) within six months after discovering the alleged fraud, so § 43-2-350(b) does not mandate dismissal of Counts Four and Five.

Defendants do not dispute that the discovery rule applies in the context of computing the six-month period prescribed by the Statute of Nonclaim. (Doc. 24, at 3.)[18] Nonetheless, they maintain in their reply brief that SEPH / Vision Bank "had sufficient facts by the end of 2008 that John Saint no longer owned assets with a value sufficient to pay the guaranteed amount of his debt to Vision Bank." (*Id.* at 24.) This argument fails for the reasons discussed in footnote 14, *supra*, in the context of defendants' assertion that Counts One and Two are untimely. As discussed *supra*, in Alabama "[t]he question of when a party discovered or should have discovered the fraud is generally one for the jury." *Jones v. Kassouf & Co., P.C.*, 949 So.2d 136, 140 (Ala. 2006) (citations omitted). The Court perceives – and movants have identified – no factual allegations in the Complaint unequivocally demonstrating that SEPH knew or should have known back in 2008 that John Saint's May 2007 financial statement was false and inaccurate. Contrary to defendants' conclusory argument, nowhere in the Complaint does SEPH plead facts showing that it knew or should have known in late 2008 that Saint did not actually own valuable assets that he listed in his financial statement. This issue cannot be definitively resolved on Rule 12(b)(6) review.

In short, Alabama law excuses contingent claims from compliance with the six-month deadline prescribed by the Statute of Nonclaim for filing statements of verified claims. SEPH's

---

[18]     Nor could defendants credibly do so. After all, the Alabama Supreme Court has long recognized that "the legislature as a matter of public policy did not intend to include 'contingent claims,' as being barred by a six months period from the time of appointment of an administrator or executor, and that an exception to the requirement of the Statute of Nonclaim is where the claim is a 'contingent' one." *Hartford Acc. & Indem. Co. v. Kuykendall*, 247 So.2d 356, 360 (Ala. 1971). Elsewhere, the Alabama Supreme Court has construed this exemption for contingent claims as embracing "claims which may never accrue …such as the liability of a surety who has no demand against the principal until his payment of the debt for which he is bound. … Or the claim which was … dependent on a future contingency which might never happen." *Fretwell v. McLemore*, 52 Ala. 124, 141 (Ala. 1875) (citations omitted); *see also Federal Deposit Ins. Corp. v. Harry Brown & Co.*, 2015 WL 8492460, *4 (M.D. Ala. Dec. 10, 2015) ("a claim which had not accrued within 6 months of the issuance of letters testamentary is not barred by the non-claim statute"). And in Alabama, fraud claims do not accrue until they are or should be discovered. *See, e.g.,* Ala. Code § 6-2-3 ("In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud."). Because fraud claims accrue upon discovery of the fraud, and because the "contingent claim" exception to the Statute of Nonclaim reaches claims that have not yet accrued, the discovery rule plainly applies here.

fraud claims are properly viewed as "contingent" for purposes of that exception. On the limited information presented, the Court cannot make a conclusive determination as to when SEPH / Vision Bank should have discovered the alleged fraud. As such, a final ruling on the application of the discovery rule to these facts is not appropriate at the pleadings stage. Therefore, the Court cannot find at this time that Counts Four and Five are outside the ambit of the discovery rule, much less that SEPH failed to comply with the Statute of Nonclaim. The Motion to Dismiss is properly **denied** as to this theory.

### E. Stay / Abstention Issues.

The remainder of defendants' Motion is devoted to requests for *Colorado River* abstention and a discretionary stay. (Doc. 11, at 21-26.) In their reply, however, defendants withdrew their request for *Colorado River* abstention. (Doc. 24, at 21.) Based on defendants' stated intention not to pursue that issue, the Motion for Court to Abstain is **denied**.

With respect to the alternative Motion to Stay, defendants urge this Court to "stay this case pending the conclusion of the existing probate proceeding," reasoning that the Mobile County Probate Court will "determine[] the outcome of the issues raised by Plaintiff in this proceeding." (Doc. 11, at 25-26.) Certainly, federal district courts are empowered to enter stays in such circumstances. *See, e.g., Clinton v. Jones*, 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Ortega Trujillo v. Conover & Co. Communications, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000) ("A stay sometimes is authorized simply as a means of controlling the district court's docket and of managing cases before the district court."). "In exercising this discretion, district courts have considered such factors as: (1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the court." *Green v. Roberts*, 2010 WL 5067442, *2 (S.D. Ala. Dec. 6, 2010) (citations and internal marks omitted). Under the circumstances, the Court declines to exercise its discretion in favor of staying these proceedings. Most notably, it is not apparent that a stay would serve any constructive purpose. Defendants have not shown that the Mobile County Probate Court is likely to address, much less resolve, the specific issues joined in this proceeding; therefore, the Court cannot find on this showing that a stay is likely to simplify or streamline the issues, or reduce the

burden of litigation on the parties or court staff. Accordingly, the Court, in its discretion, **denies** defendants' Motion to Stay.

**III.  Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1.  Defendants' Motion to Correct by Supplementing Defendants' Reply to Plaintiff's Response (doc. 28) is **granted**. The lengthy indented paragraph on pages 2 and 3 of the Motion to Correct is **substituted** for the fourth paragraph of Section II.A. of Defendants' Reply (doc. 24), found on pages 11 and 12;

2.  Defendants' Motion to Dismiss Each Count or in the Alternative for a More Definite Statement of Count Three and Motion for Court to Abstain or in the Alternative Stay Proceedings (doc. 10) is **denied** in its entirety; and

3.  Defendants' answer or answers must be filed on or before **May 15, 2017**.

DONE and ORDERED this 1st day of May, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE